[Opinion delivered May 31, 1880.]

---

ANN BURCHAM ET AL. v. W. O. GANN.

(Case No. 3296.)

1. HOMESTEAD — ABANDONMENT — EVIDENCE.— A husband and wife owned land in Texas and lived upon it as a homestead. The wife becoming dissatisfied they went to another state. Afterwards the husband returned to Texas and sold the land, the wife not joining

in the deed. In a suit by the wife, against the purchaser, after the death of the husband, to recover the property as her homestead, her declarations, made before leaving the state, showing dissatisfaction with the country and intention of leaving it permanently, are admissible in evidence as tending to show abandonment, even though not made to the purchaser or known to him at the time of his purchase.

2. PLEADINGS — PRACTICE — TRESPASS TO TRY TITLE. — The defendant has the right, under the plea of not guilty in an action of trespass to try title, to prove such facts as may show that the plaintiff has no right to recover, and when the plaintiff claims the property as homestead, testimony of witnesses as to declarations of the plaintiff showing intention to abandon it as a homestead, is admissible without any plea on the part of the defendant alleging abandonment. No other plea than that of " not guilty " is required to admit evidence which disputes and controverts the homestead claim. 3 Tex., 60; 10 Tex., 84; 11 Tex., 662; 16 Tex., 563; 25 Tex., 271.

3. HOMESTEAD. — One who has ceased to be a citizen of Texas cannot claim a homestead or homestead rights in this state. 19 Tex., 275; 8 Tex., 312.

4. CHARGE OF THE COURT — WEIGHT OF EVIDENCE. — It is improper for the court to call the attention of the jury to particular parts of the evidence; and a charge which instructs the jury to "look to the declarations of the plaintiff to see whether she ever claimed the property in question as her homestead, and to her declarations about leaving it, and they will look to the evidence to see whether she did leave it, or leave the state in accordance with her declarations, and if so, then her declarations are evidence of her intention, and if the evidence shows that she left the state in 1866 and refused to return when requested by her husband by letter, then the abandonment is complete, and the jury will find for defendant," is a charge upon the weight of evidence and erroneous. 28 Tex., 566; 26 Tex., 212; 13 Tex., 175; 20 Tex., 247; 22 Tex., 479.

APPEAL from Navarro. Tried below before the Hon. F. P. Wood.

Ann Burcham, joined by her husband, brought suit, in form of trespass to try title, to recover of the appellee a certain tract of land described in their petition, on September 4, 1874. Mrs. Burcham, formerly Mrs. Cowan, with her first husband, Datus Cowan, acquired the land during their marriage; they occupied it as a homestead from the year 1861 until the year 1866, in the fall of which year they went out of the state; whether with the intention of aban-

doning their homestead, and to leave the state without the intention of returning to it, or not, is a material and controverted issue in this case. A few weeks after thus leaving, with the intention, at all events, of going out of the state, Datus Cowan returned to Navarro county, and, in the month of January, 1867, conveyed, by warranty deed, the said land to William O. Gann, the appellee, for the consideration, as expressed in the deed, of $1,200. Shortly afterwards, in the spring of the same year, he started back to rejoin his family, and was murdered in the Indian Nation.

The petition alleges that the plaintiffs reside in the county of Henry, state of Missouri; that the plaintiff Ann Burcham has never, at any time since her occupation and designation of said tract of land as her homestead, nor at any time, abandoned, or in any manner or form relinquished, her claim or right to said land as a homestead; but alleges that she still claims and is legally entitled to the possession of said tract of land as her homestead, and was lawfully seized and possessed of said tract of land on the ⸺ day of ⸺, A. D. 1867, holding the same in fee-simple. The petition alleges that, on the day last aforesaid, the defendant entered upon said premises and ejected her therefrom, etc.; claiming damages and the recovery of possession.

The defendant answered by a plea of "not guilty," three years' limitation, and a suggestion of good faith and valuable improvements. The cause was submitted to a jury; verdict and judgment for the defendant. The charge given to the jury had regard alone to the question of right of the plaintiff, Ann Burcham, to recover on the facts respecting her homestead rights in the land, as the same may have been affected by abandonment of the same or by domiciliation in another state. Mrs. Burcham never returned to Texas from the time she left in 1866 up to the time of instituting her suit, nor until a few months before the trial of the cause at the July term, A. D. 1875. There was considerable evidence, given through the testimony of several witnesses, tending to establish her dissatisfaction with Texas as a place of residence, and a desire to leave it, and to return

to the north, whence she had removed when she migrated to Texas. This evidence consisted in declarations made by her in conversations at different times before she left Texas; the witnesses who detailed them were Davis Meador, A. T. Barton, B. F. Cummings, John Brumbelow and John Ballew; to the introduction of which she objected, but which was allowed by the court. Mrs. Burcham testified fully as to her acts and intentions respecting her homestead rights from the date of her original removal to Texas down to the date of the institution of suit, and of the trial; the purport of which was an emphatic denial of intention to abandon her home; ignorance of the sale of the land by her husband until about three years before the trial; affirming that she had not received anything whatever as the equivalent for the sale of the property; that she has never acquired any other homestead; that she and her former husband left Texas in April, 1866, on a visit to their friends in the north, leaving two good log houses on the land, a good well and a small field inclosed. She also testified that they left at their home their stock and farming utensils on the land. That after the death of her husband she went from Illinois to Missouri, hoping to come to Texas; that she married in Pettis county, Missouri, her present husband in the year 1869; that he, like herself, had no homestead; that she had been too poor to return to Texas, and had to borrow money to enable her to do so when she did come. She stated that she and her former husband owned one thousand two hundred and eighty acres of land in Navarro county; that after the war the living in Texas was very hard; that they had no tea or coffee, and she wanted to go where she could get it. On cross-examination she stated "that she never had intended to leave her home for always;" that she had never said to Davis Meador or others "that her bones should not be buried in Texas, or, that if her husband died here, that he should not be buried in Texas." R. G. Burcham, her husband, testified that when he married the plaintiff, she was living with the family of one Wilson, from Illinois; that his wife had no home when he married her, except a home

which she said she had in Texas; that he had no homestead then, nor has he acquired one since. He stated that he was living on a rented farm in Missouri when he married in 1869; and that this suit was pending when he came to Texas.

The testimony of the witnesses for the defense, Brumbelow, Meador, Ballew and Cummings, consisted of evidences of dissatisfaction with the people and the country on the part of Mrs. Burcham, then Mrs. Cowan, as indicated by decided expressions repeatedly made from a period as far back as 1864, up to the time of her leaving the state; that both she and her husband had so expressed themselves. Among the various statements and remarks which were attributed to her were such as these, viz.: "that she had a home in the north and was going back to it;" "that she wouldn't stay in this country;" "that if Mr. Cowan died here his bones should not remain;" and a short time before she left "that she was going right north; that she didn't claim Texas as her home." Also, "that there was nothing to eat here, and she was going north among her friends where she could enjoy the luxuries of life;" "that she was going north and wouldn't live here." Ballew stated that she was dissatisfied generally with the people and country; that her husband was likewise dissatisfied; that their dissatisfaction arose from the fact that, as northern people, they were afraid to live here until times got more quiet. It was admitted on the trial that Mrs. Burcham, up to the time of her leaving the county and state, always told Mr. Cummings that she did not claim her home here, but that her home was in Wisconsin, and that she intended leaving the state and did not intend to live here any more; that she was dissatisfied with the country and people. It was admitted on the trial that B. F. Cummings will testify that while Datus Cowan was in Texas in 1867, he got said Cummings to write to Mrs. Cowan (the plaintiff), in Illinois, to come back to Texas and live with him on the place in controversy, and that Datus Cowan received an answer from her in response to said letter, in due course of mail, stating

in substance that she would not return to Texas, as she had determined to live here no more; which letter was read by Cummings, which was shown to him by Cowan. It·was also admitted that Datus Cowan signed his wife's mark to the deed to W. O. Gann; that she was not present when the deed was executed, and also that Cowan signed her mark at his own instance, stating that he had been requested by his wife to sign it.

The plaintiff objected to so much of the foregoing evidence ·of said witnesses as was offered to prove the declarations of the plaintiff, Mrs. Burcham, before her departure from Navarro county, in order to show an abandonment of her homestead, upon the grounds: 1st. That the defendant had filed no plea in this suit alleging the abandonment of said premises by the plaintiff. 2d. Because the defendant never heard any of these declarations proposed to be proved, and was not induced by reason of them to purchase the premises in controversy from Datus Cowan without the signature or consent of the plaintiff, Ann Burcham. 3d. Because most of said declarations were proved to have been made at too distant a period from the date of the plaintiff's departure from her homestead, to be competent evidence to establish an intention on her part to abandon it. Exceptions were also taken to charges of the court Nos. 3, 4, 5 and 6, at the time they were given, because they are not in accordance with law; because not applicable to the facts; and because they conflict with charges given by the court of its own motion, and with charges given the jury at the request of the plaintiffs.

The plaintiffs' motion for a new trial was overruled, and they appealed; they assign numerous grounds of error, but none other of them need be considered, except those which relate to the introduction of the evidence over their objections, which has been sufficiently stated, and the errors alleged to have been made in charges Nos. 3, 4, 5 and 6.

*R. C. Beale* and *Sam. R. Frost,* for appellant.

*W. Croft,* for appellee.

WALKER, P. J.— The first ground of objection to the tes-. timony of witnesses as to the plaintiff's declarations is that the defendant had filed no plea alleging abandonment by the plaintiff. This ground of objection is not well taken. This action, being in form an action of trespass to try title, it admitted, under the plea of "not guilty," evidence of such facts as may show that the plaintiff has no right to recover. The plaintiffs in their petition set out the right or title under which Mrs. Burcham claims, viz., her right to the premises in virtue of her homestead rights in the same, which she alleges she still claims, and has never at any time since her occupation and designation of said tract of land, nor at any time, abandoned nor relinquished her claims or right to said land as her homestead.

The case which the plaintiff presents by her petition is that she was, at the date of the institution of the suit, entitled to recover by virtue of her homestead rights in the premises; she sets out distinctly the right and title under which she claims, as has been above stated. No other plea than that of "not guilty" was required to admit evidence which disputed and controverted the title and claim thus set up by her. Punderson v. Love, 3 Tex., 60; Blair v. Cisneros, 10 Tex., 34; Rivers v. Foote, 11 Tex., 662; Dalby v. Booth, 16 Tex., 563; Mann v. Falcon, 25 Tex., 271.

The cases to which we have been cited by the appellant's brief do not conflict, we think, with the view taken by us. Such evidence is strictly in rebuttal of the allegations made by the plaintiff's petition.

The other grounds of objection are equally untenable; to render such evidence admissible it was not essential that the defendant should have known of its existence when he pur- chased, and that he should have been influenced by and relied on it as assertions on the part of Mrs. Burcham, dis- claiming further claim to her homestead, so as to estop her from now setting up a claim thereto as against the convey- ance to him. The material issue was of a character that essentially involved the inquiry as to Mrs. Burcham's inten- tions in respect to returning again to her home in Texas at

the time she left, and during the subsequent period of her continuing absence. Her expressions from time to time going to show the state of her mind respecting a disposition to remaining temporarily or permanently; admissions or statements indicating a reason or motive for a departure from her home, and which would tend to explain whether her contemplated absence was intended by her to be permanent or otherwise, whilst they do not constitute of themselves the act of abandonment, nor are they conclusive evidence of such intention, nor that such intention, if existing at the time of making such declarations, continued afterwards to remain the same, nevertheless they are facts and circumstances, which, together with all the other evidence, may properly be adduced and considered in determining the true motives which influenced her departure, and from which may be interpreted and construed the actual intentions of Mrs. Burcham in respect to her domicile during a long protracted absence from her former residence and home.

The remaining ground of objection, of remoteness of the period when *most* of the declarations were made, when considered in relation to the nature of the facts sought to be established by the evidence, must be regarded as insufficient to exclude it. The continuity, consistency and persistency in making similar expressions on the same subject during a period of consecutive years would afford a proper basis for judgment and discrimination, on the part of the jury, in determining the weight to be given to exclamations of dissatisfaction with the country, made just before leaving it. It would be proper evidence whereby to distinguish, at their just value, between expressions which might otherwise be deemed ill considered, hasty sallies of petulant humor, arising from irritation produced by care and anxiety, and a sedate and fixed dissatisfaction which may at last have culmination in a stern resolution to pursue a given course with a mind fully made up as to the future. We conclude that the evidence was properly admitted, over the objections which were made to its introduction.

The third assignment of errors is, that the court erred in

instructing the jury that "citizens resident in another state cannot claim homestead rights in this state; and if the pleadings show the plaintiffs are domiciliated [citizens] of Missouri, and the evidence is that plaintiffs have come to Texas only to attend to this suit, they have no rights in this court," because the same is not applicable to the evidence.

The fourth assignment is that the court erred in instructing the jury "that in this case, if the jury believe from the evidence that the plaintiff was not a citizen of Missouri by actual domicile, but was only remaining in the state until she could come to Texas, and that she was not domiciled in Missouri, then she cannot assert her claim to homestead rights as alleged in this case," because the same is not applicable to the evidence and was therefore calculated to mislead the jury. The verbiage of the first recited instruction appears to be subject to some criticism; the idea, however, which is prominently developed in it, presented properly the law on the question. It would have been more accurate for the court to have wholly pretermitted the reference which is made to the pleadings, unless it had in that connection stated what they contained, and to have explained the purport and effect thereof, and to have submitted plainly the legal proposition that a citizen of another state cannot claim a homestead nor homestead rights in this state, and that the jury would, from all the evidence before them, determine whether the plaintiffs, at the date of the institution of their suit, were or were not domiciliated in the state of Missouri, as resident citizens of that state. The jury have nothing to do with the pleadings as such. Bradshaw v. Mayfield, 24 Tex., 482.

The reference made in the charge to the plaintiffs coming to Texas merely to attend to this suit is rather an antithetical statement — a supposed fact, which is propounded as the converse of citizenship in Texas, and defining it to be citizenship in Missouri, rather than a charge upon the weight of evidence; nevertheless, that form of propounding the legal proposition is objectionable, as savoring at least of emphasizing certain parts of the evidence, if not as charging

on the weight of the evidence. The plaintiffs' petition alleges that they are residents of the state of Missouri, and the evidence left it a disputable fact whether Mrs. Burcham was simply commorant in Missouri, or whether the facts relating to her residence or inhabitancy there at that time, and previous thereto, were not characteristic of actual domiciliation as a citizen of Missouri. A charge presenting somewhat more clearly the legal proposition which was evidently aimed to be presented by the court would not have been incorrect in law, and would have been applicable to the evidence; and we do not suppose that the want of exact precision in the terms of this charge caused any misapprehension by or misled the jury.

The other charge, above quoted, cannot be objected to by the plaintiffs; it was given upon the same legal proposition as that above discussed, and is but the converse of it, to the effect that if the plaintiff, Mrs. Burcham, was then not a citizen of Missouri by actual domicile, etc., that she could assert her homestead rights, as alleged in her petition. The charge was more favorable to her in connection with the subject of residence and citizenship, as applied to the issue in the case, than she had a right to ask; for it makes her right to sue here for her homestead rights depend too much on whether the jury believed her to be a citizen of the state of Missouri; whereas, if she was not a citizen of Texas, that fact was quite sufficient to defeat her right to recover a homestead right in this state, even though she may have acquired no permanent domiciliation or citizenship in the state of Missouri or elsewhere, provided she had definitely abandoned her residence and homestead in Texas. If she had ceased to be, and was not then, a citizen of Texas, she did not answer to the class of persons for whom the laws of Texas provide the benefits of homestead privileges, estates and exemptions. Jordan v. Goodman, 19 Tex., 275; Trawick v. Harris, 8 Tex., 312.

The sixth assignment of errors, objecting to the sixth charge because it is contrary to the law and the evidence, and was, therefore, calculated to mislead the jury, is vague

and general.   The main proposition in it, that actual aban-
donment of a homestead and taking up a domicile in an-
other state is the same in effect as acquiring a new homestead
in it, is abstractly correct; it is, however, subject to this criti-
cism, that the proposition is unnecessarily prefaced with this
statement, viz.: "it matters not what may be the secret
intent of a person abandoning her homestead, if it is actu-
ally done," which was calculated to confuse and even to
mislead.   It would have been unexceptionable in a charge
on those points if the court had carefully defined the ele-
ments which constituted an actual abandonment, as to both
the intent of the mind and also the corresponding act or
fact, and then to have followed that explanation with the
main proposition; otherwise, the charge, as given, was liable
to lead the jury to infer that a *bona fide* intention, if unex-
pressed, not to abandon nor relinquish the homestead right,
would not avail against the mere fact of protracted absence
from the home.   The charge of the court had elsewhere,
however, very well defined what was required to constitute
abandonment; still, on the proposition of law having, as it
might have seemed to the jury, a specific application to a
domiciliation abroad, rendered it proper for the court either
to have presented the two subjects separately and discon-
nected from each other, or else to have preserved clearly, by
discriminating explanations, the elements of both subjects,
if they are presented together in the same proposition.   Not-
withstanding the criticism we do not regard the inaccuracy
referred to such as probably had the effect to mislead the
jury, nor would the judgment be reversed therefor.

The fifth assignment of errors is that the court erred in
the following instruction, viz.: "The jury will look to the
declarations of the plaintiff, Mrs. Cowan, to see whether she
ever claimed the property in question as her homestead, and
to her declarations about leaving it; and they will look to
the evidence to see whether she did leave it or leave the
state in accordance with her declarations, and if so, then
her declarations are evidence of her intention, and if the
evidence shows that she left the state in 1866 and refused to

return when requested by her husband by letter, then the abandonment is complete and the jury will find for defendant." The assignment complains that this instruction is contrary to law and the evidence, and is without any pertinent meaning, and was, therefore, calculated to mislead the jury.

This charge is materially and essentially erroneous; it confines the jury to the consideration of plaintiff's, Mrs. Burcham's, declarations, from which to determine whether she claimed the property as her homestead, instead of leaving the jury to determine that fact from all the evidence before them, tending to show her claim and intention, continuously, to claim the same as her homestead. The jury are further instructed to look to the evidence to determine whether she left her home, or left the state in accordance with her declarations, and if they were satisfied of that fact from the entire evidence, that her declarations are evidence of her intention. Intention to do what? The jury rightly would imply the meaning to be, intention to permanently abandon her home and the state. Such a limitation, thus confining the jury to the consideration of her declarations, was in effect instructing them that they would not regard, in that connection, any other fact or evidence which may have tended to prove her intention of permanently abandoning her home and the state, except her declarations. These declarations must have been understood by the jury to refer, not to her testimony explanatory of her actions and motives, but to the remarks and declarations testified to by several witnesses concerning her intention to leave the state.

The charge further instructed them that, if she refused to return when requested by her husband by letter, that then the abandonment was complete, and the jury would find for the defendant. This portion of the charge was clearly a construction placed by the judge upon the force which he assigned to the act in question, and the jury were directed to act upon it as a conclusive fact against the plaintiffs. It was manifestly a charge upon the weight of the evidence; it was a charge in express derogation of the peculiar prov-

ince of the jury to weigh all the evidence before them, and is in contravention of the letter and spirit of the law regulating trials by jury. Kimbro *v.* Hamilton, 28 Tex., 566; Andrews *v.* Marshall, 26 Tex., 212. The judge should not decide upon the facts, nor endeavor to influence the jury in their decision upon the facts. Jones *v.* The State, 13 Tex., 175. It is improper for the court to call attention of the jury to particular parts of the evidence. Woods *v.* Chambers, 20 Tex., 247; Castro *v.* Illies, 22 Tex., 479.

"The judge should distinctly separate questions of law from questions of fact; and a charge which determines both, without separating them, and without submitting the questions of fact to the decision of the jury, is erroneous." Rogers *v.* Broadnax, 24 Tex., 538. If an erroneous charge has been given to the jury, which may have influenced the finding, and in the absence of which the finding might have been different, a new trial will be granted, although the court may be satisfied with the verdict. Mims *v.* Mitchell, 1 Tex., 443; Chandler *v.* Fulton, 10 Tex., 2; Bailey *v.* Mills, 27 Tex., 434. The charge which was given was well calculated to influence the finding of the jury; and if a proper charge had been given instead, we are not authorized to determine that the jury might not have found a different verdict. We cannot weigh probabilities as to the conclusions the jury might have reached under a correct instruction, where, as in this case, they may have been and probably were influenced to act decisively against the plaintiff, Mrs. Burcham, under a positive charge bearing upon the effect of the plaintiff's refusal to return to Texas at the request of her husband. The evidence before the jury was not such as to lead to but one possible result, and that result a verdict in favor of the defendant; and unless the verdict rendered by the jury was necessarily correct, and one which the jury, under proper instructions, must have rendered, it cannot be sustained, and for the error in the charge the judgment should be reversed.

It is not necessary to consider any other of the numerous assignments of error, as those which we have noticed em-

brace substantially all the rulings of the court which have been definitely presented involving questions subject to recur on another trial.

We conclude that there is error in the judgment, for which it ought to be reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.